UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER LIPSEY, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>Dr. NORUM, et al.,<br><br>Defendants. | No. 2:18-cv-0362 KJM DB P<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants' use of the Guard One Security System deprived him of sleep in violation of his Eighth Amendment rights and state law. Before the court is defendants' motion to dismiss, plaintiff's motion to compel discovery, and defendants' motion to stay discovery. For the reasons set forth below, this court will recommend defendants' motion to dismiss be granted in part and denied in part and defendants' motion to stay discovery be denied. In addition, the court will deny plaintiff's motion to compel without prejudice.

## BACKGROUND

### I. Plaintiff's Allegations

This case is proceeding on plaintiff's second amended complaint ("SAC") filed November 17, 2017. (ECF No. 151.) Plaintiff alleges that starting in May 2013 when he was incarcerated in the Administrative Segregation Unit ("ASU") at Pelican Bay State Prison ("PBSP") and

continuing through most of plaintiff's other prison placements since then, he has been subjected to frequent security checks using the Guard One system.[1] Plaintiff alleges the Guard One system requires officers to strike a metal plate on each cell door with a metal pipe. The metal pipe has an electronic sensor that records each such contact. Plaintiff contends the noise from the use of Guard One has deprived him of sleep in violation of the Eighth Amendment. He also alleges state law claims for violation of the California Constitution, for negligence, and for intentional infliction of emotional distress.

Plaintiff identifies numerous defendants who he classifies into two groups: warden defendants[2] and state-level CDCR defendants.[3] He sues the wardens and all but one of the state-level defendants in their individual capacities. (ECF No. 151 at 2-3.) He sues defendant Kernan in his official and individual capacities. (Id. at 3.) He seeks damages from all defendants. In addition, he seeks injunctive and declaratory relief against defendant Kernan. See Virginia Office for Protection and Advocacy v. Stewart, 563 U.S. 247, 269 (2011) (suit for injunctive relief must be brought against a state official in his official capacity).

////

////

---

[1] Plaintiff lists the following housing assignments that involved the use of Guard One: (1) PBSP ASU from May 2013 to September 2013 and from December 2013 to September 2014; (2) California State Prison- Corcoran ("Corcoran") Security Housing Unit ("SHU") from September 2014 to March 2016; (3) Corcoran PSU and California Men's Colony ("CMC") ASU for periods of time between March 2016 and August 2016; (4) Folsom State Prison ("Folsom") Psychiatric Services Unit ("PSU") from August 2016 to March 2017; and (5) Corcoran SHU from March 2017 to November 2017 when plaintiff filed his SAC. (SAC (ECF No. 151) ¶¶ 29-36.)

[2] The warden defendants are: (1) Greg Lewis, PBSP Warden in 2013; (2) Clark Ducart, Acting Warden and later Warden of PBSP since 2014; (3) David Davey, Acting Warden and then Warden of Corcoran since 2014; (4) Josie Gastelo, Warden of CMC since 2016; and (5) Ron Rackley, Warden of Folsom since 2016. (ECF No. 151 at 2.)

[3] The state-level CDCR defendants are: (1) Michael Stainer, Acting Director and then Director of CDCR's Division of Adult institutions from 2013 to 2014; (2) Kelly Harrington, Director of the Division of Adult Institutions from 2015 to March 2016; (3) Kathleen Allison, Director of the Division of Adult Institutions since 2016; (4) Jeffrey Beard, Secretary of CDCR from December 2012 through December 2015; and (5) Scott Kernan, Secretary of CDCR since January 2016. (ECF No. 151 at 3.)

## II. Procedural Background

Plaintiff initiated this action in pro per by filing a complaint in 2014 in the Northern District of California. In 2017, that court appointed counsel for plaintiff. (ECF No. 141.) On November 17, 2017, plaintiff filed the SAC. (ECF No. 151.)

On January 3, 2018, defendants filed a motion to dismiss this action and a related action, Suarez v. Beard. Defendants argued that both cases should be dismissed because the Guard One system was instituted pursuant to an order issued by Judge Mueller in Coleman v. Newsom, No. 2:90-cv-0520 KJM DB (E.D. Cal.). On February 9, 2018, after hearing argument on the motion to dismiss and without ruling on it, the Northern District judge transferred the present case and Suarez to the Eastern District. (ECF No. 161.) In March 2018, both cases were related to Coleman. (ECF No. 166.) Since then, several other cases challenging use of the Guard One system in the California prisons have been related to Coleman as well.

In March 2019, Judge Mueller granted in part and denied in part the defendants' motion to dismiss in one of the related cases, Rico v. Beard, No. 2:17-cv-1402 KJM DB P, 2019 WL 1036075 (E.D. Cal. Mar. 5, 2019). The issues in Rico concern use of the Guard One system at the Security Housing Unit ("SHU") at PBSP in 2015 and 2016. Judge Mueller dismissed Rico's claims for injunctive and declaratory relief because he was no longer housed in the SHU or ASU, where Guard One checks were used. Rico, 2019 WL 1036075, at *5-6. Judge Mueller further held that the Guard One system was not, on its face, unconstitutional. On that basis, she distinguished the high-level supervisory defendants, who only bore responsibility for instituting the Guard One system as required by the order in Coleman, and the other two categories of defendants, who were responsible for the day-to-day implementation of the Guard One system. Judge Mueller dismissed the high-level supervisory defendants because they are protected by qualified immunity. She held that the appeals review defendants and floor officer defendants were not so protected. See id. at 2-5.

At this court's request, the parties filed briefs regarding any effects of Judge Mueller's decision in Rico on defendants' motion to dismiss in the present case. (ECF Nos. 176, 178, 184.) When the Rico defendants filed an interlocutory appeal of Judge Mueller's order, this court

ordered the parties to state their positions on a stay of these proceedings pending the Ninth Circuit's decision on the qualified immunity issues in Rico.[4] (See ECF Nos. 186, 189, 190, 194.)

On April 24, 2019, plaintiff filed a motion to compel defendants to respond to plaintiff's first request for production of documents and admissions. (ECF No. 179.) In response, defendants moved to stay discovery. (ECF No. 181.)

**MOTION TO DISMISS**

Defendants move to dismiss this action on several grounds. They argue they are entitled to qualified immunity, plaintiff's claims are precluded by the principles of judicial comity, and plaintiff's claims are precluded because they are a collateral attack on an order issued in Coleman. Finally, defendants argue this court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.

**I.     Standard of Review on Motion to Dismiss**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for motions to dismiss for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept as true the allegations of the complaint, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may 'generally consider only allegations contained in the pleadings, exhibits attached

---

[4] The Rico appeal is Ninth Circuit No. 19-15541.

4

to the complaint, and matters properly subject to judicial notice.'" Outdoor Media Grp., Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citing Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007)).

**II.     Analysis**

   **A.   Qualified Immunity**

Defendants argue that they are entitled to qualified immunity because they were simply complying with Judge Mueller's order in Coleman requiring the ASU, SHU, and PSU units in the California prisons to use the Guard One safety and security checks every 30 minutes. Plaintiff argues that the Coleman order does not shield defendants for two reasons. First, plaintiff was subjected to Guard One checks starting in 2013, well before the Coleman order was issued in February 2015. See Coleman, No. 2:90-cv-0520 KJM DB P (ECF No. 5271). Second, defendants were aware that the Guard One checks were depriving inmates of sleep because they either saw the checks in use or were aware of prisoner complaints on the subject.

   **1.   Legal Standards**

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

////

5

"For the second step in the qualified immunity analysis—whether the constitutional right was clearly established at the time of the conduct—the critical question is whether the contours of the right were 'sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011) (quoting al-Kidd, 563 U.S. at 741) (some internal marks omitted). "The plaintiff bears the burden to show that the contours of the right were clearly established." Clairmont v. Sound Mental Health, 632 F.3d 1091, 1109 (9th Cir. 2011). "[W]hether the law was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Estate of Ford, 301 F.3d at 1050 (citation and internal marks omitted). In making this determination, courts consider the state of the law at the time of the alleged violation and the information possessed by the official to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see also Hope v. Pelzer, 536 U.S. 730, 741 (2002) (the "salient question" to the qualified immunity analysis is whether the state of the law at the time gave "fair warning" to the officials that their conduct was unconstitutional). "[W]here there is no case directly on point, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" C.B. v. City of Sonora, 769 F.3d 1005, 1026 (9th Cir. 2014) (citing al—Kidd, 563 U.S. at 740). An official's subjective beliefs are irrelevant. Inouye, 504 F.3d at

**2. Facts Relevant to Qualified Immunity Defense**

    **a. Plaintiff's Claims**

Plaintiff alleges that officers in the PBSP ASU began conducting safety checks using the Guard One system starting on May 28, 2013. According to plaintiff, those checks occurred every thirty minutes. (SAC (ECF No. 151) ¶ 29.) Except for a one-month break, he contends he was subjected to the Guard One checks at PBSP until he was transferred to the SHU at Corcoran in September 2014. He alleges that he also experienced Guard One checks in the Corcoran SHU from September 2014 until March 2016. (Id. ¶¶ 32, 33.) Since then, with just a few exceptions, he has been incarcerated in the ASU, SHU, or PSU of various prisons, all of which use the Guard

////

1 | One safety checks. He alleges that use of the Guard One checks has caused, and continues to
2 | cause, severe sleep deprivation.

Plaintiff's allegations against most defendants are that they were generally involved in the initial institution of the Guard One checks or were responsible for its implementation at each prison. With respect to most of the warden defendants, plaintiff simply alleges they "are aware that the Guard One checks awaken inmates because they have witnessed the checks being carried out in their roles supervising the implementation of the policy." (SAC (ECF No. 151) ¶ 62.) He alleges the state-level CDCR defendants were aware that Guard One awakened inmates because they had "likely" seen how the Guard One system operated before ordering its use statewide and because other inmates had filed grievances and lawsuits regarding use of the Guard One system.

Plaintiff makes more specific allegations against just one defendant. Plaintiff alleges he filed a grievance in July 2013, when he was incarcerated in the PBSP ASU. According to plaintiff, defendant Ducart, the PBSP Warden, reviewed, and denied, his second level appeal on September 4, 2013. (SAC (ECF No. 151) ¶¶ 51-54.)

### b. Institution of Guard One in California Prisons

In 2014, as part of the Coleman class action, the special master's expert conducted an audit of the suicide prevention practices in the California prisons. The results of that audit were summarized by the special master in a report filed January 14, 2015. Coleman, No. 2:90-cv-0520 KJM DB P (ECF No. 5258). The entire report was also submitted. Id. (ECF No. 5259).

The report states that in 2014:

> CDCR implemented the Guard One system to verify 30-minute welfare checks of all inmates in administrative segregation during the first 21 days of their stays. Per memorandum dated May 9, 2014 from the CDCR Director of the Division of Adult Institutions (DAI), use of the Guard One system was amended again to require welfare checks of all inmates in administrative segregation, SHUs, and Condemned Units at staggered intervals not to exceed 35 minutes via the Guard One system for the entire lengths of their stays.

Id. at 14.

////

////

On February 3, 2015, Judge Mueller ordered defendants to "adopt the recommendations contained in the Special Master's Report on his Expert's Audit." Id. (ECF No. 5271).[5] One of those recommendations was to continue the implementation of the May 9, 2014 directive,[6] which required use of the Guard One system in administrative segregation units. Id. (ECF No. 5258 at 6).

### 3. Are Defendants Entitled to Qualified Immunity?

#### a. Use of Guard One prior to February 3, 2015

Defendants do nothing to address plaintiff's argument that they cannot be protected by qualified immunity based on Judge Mueller's order in Coleman prior to issuance of that order on February 3, 2015. This court agrees with plaintiff that defendants' qualified immunity argument for the time period from May 2013, when plaintiff alleges Guard One procedures were implemented in the PBSP ASU, through February 3, 2015 must be considered differently.

To the extent defendants are arguing that the right not to be subjected to continual loud noises and the right not to be deprived of sleep were not "clearly established," Judge Mueller has held otherwise. In Rico, Judge Mueller held that forcing an inmate to live in an environment with excessive noise can violate the Eighth Amendment. Rico, 2019 WL 1036075, at *4. She further found it clearly established that causing an inmate excessive sleep deprivation can be an Eighth Amendment violation. Id. Accordingly, defendants' argument should be rejected.[7]

Based on the allegations in the SAC, plaintiff was incarcerated first at PBSP and then at Corcoran prior to February 2015. (ECF No. 151, ¶¶ 29-33.) The defendants who plaintiff alleges were involved with the implementation of Guard One during that time are: Lewis, Ducart, Davey, Stainer, Harrington, and Beard. (Id. ¶¶ 9-11, 15, 16, 18.) This court will recommend

---

[5] The parties appear to agree that this February 2015 order is the first time the court required use of the Guard One system.

[6] The May 9, 2014 directive set out a schedule for implementation of Guard One, first in ASUs, then in most PSUs and SHUs. See Coleman, No. 2:90-cv-0520 (ECF No. 5259 at 15 n. 26).

[7] While Rico complained of conduct occurring in 2015 and 2016, Judge Mueller's analysis and the authority she cites make her holding equally applicable to plaintiff's claims here, which arose starting in 2013.

8

defendants' argument that they are protected by qualified immunity based on the February 2015 order issued in Coleman be rejected as to these six defendants for the time period prior to February 3, 2015.[8]

### b. Use of Guard One after February 3, 2015

Defendants have a strong argument that they are protected by qualified immunity for the time period after issuance of the Coleman order. In Rico, Judge Mueller held that the Coleman order is facially valid. Rico, 2019 WL 1036075, at *2. Therefore, those defendants who were involved only in the initial institution of the Guard One system pursuant to that order were entitled to qualified immunity. On the other hand, defendants who were involved in day-to-day use of the Guard One system and who were alleged to have purposely misused the system to cause excessive noise, or who were aware of that problem, were not entitled to qualified immunity. Id. at *2-5.

This court finds no basis upon which to distinguish the holding in Rico from the issues involving use of Guard One after February 2015 in the present case. Therefore, the question is whether plaintiff alleges each defendant was aware that the Guard One system was being implemented improperly to cause plaintiff to be exposed to excessive noise and severely deprived of sleep.

The CDCR level defendants that plaintiff alleges were involved after February 3, 2015 are: Harrington, Allison, Beard, and Kernan. (SAC (ECF No. 151) ¶¶ 16-19.) As described above, plaintiff's only allegations against these defendants are that they had "likely" seen how the Guard One system operated and were aware of grievances and lawsuits filed by other inmates. However, the fact these defendants could have been aware that the Guard One system created noise or was awakening some inmates does not mean they were aware of any abuses of the system. Based on Judge Mueller's order in Rico, these defendants should be entitled to qualified

////

---

[8] Defendants do not argue the first part of the qualified immunity analysis: that the facts alleged, taken in the light most favorable to the plaintiff, do not demonstrate that the defendant's conduct violated a statutory or constitutional right. Therefore, this court does not address that question.

immunity to plaintiff's claims for damages resulting from their actions occurring after February 3, 2015.[9]

The warden defendants that plaintiff alleges were involved after February 3, 2015 are: Davey, Gastelo, and Rackley. (SAC (ECF No. 151) ¶¶ 11-13.) Plaintiff alleges that these wardens were aware that Guard One awakens inmates because they witnessed the checks being carried out. This allegation demonstrates only that these warden defendants knew Guard One caused some noise. It is insufficient to demonstrate that these defendants were aware that the system was being used inappropriately to cause plaintiff harm. Accordingly, these defendants should also be entitled to qualified immunity for their actions occurring after February 3, 2015.

### B. Judicial Comity and Collateral Attack on Coleman Order

Defendants also argue that the court should not disturb the Guard One orders issued in Coleman for two reasons. First, they argue that principles of judicial comity dictate against interfering with the Coleman orders. Second, they point out that plaintiff is a Coleman class member. As such, defendants argue, plaintiff may not collaterally attack in this action an order issued in Coleman.

Both of defendants' arguments are premised on interpreting plaintiff's complaint as challenging only the use of Guard One after it was ordered in Coleman on February 3, 2015. As set out in the prior section, there are two relevant time periods in the complaint: the time period prior to issuance of the Coleman order and the time period afterwards. Because defendants base their comity and collateral attack arguments solely on plaintiff's ability to challenge an order issued in Coleman, plaintiff's claims regarding the time period after the issuance of that order are the only ones this court addresses here.[10]

In the prior section, this court finds that all defendants are entitled to qualified immunity to plaintiff's damages claims for their actions involving Guard One's use after February 3, 2015.

---

[9] Plaintiff's claim for injunctive relief against defendant Kernan should not be affected by this analysis.

[10] Defendants also do not argue that plaintiff, as a Coleman class member, may not seek injunctive relief regarding mental health treatment generally and this court does not address that question.

10

Because plaintiff seeks injunctive relief against Kernan, that is the only remaining post-February 2015 claim and is the only one addressed here.

Unlike the plaintiffs in the related Guard One cases before this court, plaintiff here is a member of the plaintiff class in Coleman. Plaintiff concedes that typically class members may not relitigate issues decided in a class action. However, plaintiff posits two arguments that he should not be bound by Coleman. First, he argues that was not adequately represented by the Coleman class representatives in 2015 when the court issued the order requiring use of the Guard One security system. According to plaintiff, only one of the five initial class representatives is still incarcerated. That one representative is Ralph Coleman. Plaintiff further alleges that it is unlikely Mr. Coleman is subject to the Guard One checks.

Second, plaintiff argues that the relief at stake in Coleman has evolved without notice to class members or review of their representation in violation of due process. Initially, according to plaintiff, the Coleman plaintiff class sought mental health care. "The question of suicide monitoring, let alone the propriety of the Guard One system in particular, was not at issue." (ECF No. 155 at 18.)

The first question for the court is whether plaintiff may challenge his representation in Coleman, and, ultimately, the February 2015 Coleman order, in the present case. The Coleman case is in its remedial phase and is ongoing. The order requiring use of Guard One was issued as part of the court's continuing supervision of California's treatment of mentally ill inmates. Plaintiff makes no showing that he cannot seek relief through Coleman. The present case is not the appropriate place for plaintiff's challenge to his representation in Coleman or orders issued therein. Cf. Cooper v. Fed. Res. Bank of Richmond, 467 U.S. 867, 874 (1984) (decisions made in class action are binding on class members).

Plaintiff cites several cases for the proposition that a court may consider a collateral challenge to an order issued in a class action. However, those cases do not support plaintiff's assertion because they are distinct in important respects.

In Hesse v. Sprint Corp., 598 F.3d 581 (9th Cir. 2010), the Ninth Circuit considered whether plaintiffs in that case could challenge a settlement entered in a state court class action. In

finding a collateral challenge appropriate, the court relied upon the facts that the state court action had concluded and that the claims being asserted in Hesse did not rest on the same factual basis as those resolved in the prior class action. Similarly, in Crawford v. Honig, 37 F.3d 485 (9th Cir. 1994), the plaintiffs sought to overturn an injunction previously issued in a federal class action, Larry P. v. Riles, 495 F. Supp. 926 (N.D. Cal. 1979), aff'd in part, rev'd in part, 793 F.2d 969 (9th Cir. 1986). The Ninth Circuit noted that the Rule 60(b)(4) was the appropriate mechanism for a collateral attack on the judgment in Larry P. Crawford, 37 F.3d at 487 n.1.

The posture of the present case is significantly different than that of Hesse or Crawford. First, unlike those cases, the prior action, in this case Coleman, has not concluded. Rather, the Coleman remedial phase is ongoing and plaintiff makes no showing he cannot seek relief from an order issued during that remedial phase through appropriate means in that case. Second, unlike the plaintiffs in Hesse, plaintiff makes no showing that his circumstances are different than other Coleman class members.

Plaintiff seeks to directly challenge an order issued as part of the active, remedial phase of Coleman. This court finds no legal basis for plaintiff to make that challenge here. If plaintiff has concerns regarding the class representation and orders issued in Coleman, he should raise those issues in that case. Because plaintiff should not be permitted in this case to collaterally attack the Coleman order requiring use of Guard One, this court recommends defendants' motion to dismiss plaintiff's claims for prospective injunctive relief against defendant Kernan be dismissed.[11]

**C. State Law Claims**

Defendants argue that the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims. Typically, federal courts will not exercise jurisdiction over pendent state law claims where the federal claims have been dismissed. See 28 U.S.C. § 1367. Above, this court recommends dismissal of some claims and defendants. To the extent plaintiff brings state law claims against those defendants, this court agrees that the state law claims against those

////

---

[11] This court notes that plaintiff's membership in the Coleman class would provide an alternative ground for dismissal of his post-February 2015 claims against the other defendants.

defendants should be dismissed as well. However, defendants provide no basis to dismiss the state law claims against defendants remaining in this action.

### D. Conclusion

For the reasons set out above, this court will recommend the following:

- Defendants' allegation that they are protected by qualified immunity for conduct occurring before February 3, 2015 when Judge Mueller issued the Guard One order in Coleman should be rejected. Accordingly, plaintiff's claims for damages against defendants Lewis, Ducart, Davey, Stainer, Harrington, and Beard regarding their conduct prior to that date should proceed.
- Defendants' motion to dismiss the claims for damages against defendants Harrington, Allison, Beard, Kernan, Davey, Gastelo, and Rackley for their conduct occurring after February 5, 2015 should be granted because these defendants are entitled to qualified immunity to these claims.
- Defendants' motion to dismiss the claims for injunctive relief against defendant Kernan be granted because plaintiff may not collaterally challenge the Coleman order in this action.
- Defendants' motion to dismiss the state law claims against defendants Lewis, Ducart, Davey, Stainer, Harrington, and Beard for their actions occurring before February 3, 2015 be denied. Defendants' motion to dismiss all other state law claims be granted.

## MOTION TO COMPEL

Based on this court's recommendations for dismissal of a significant number of plaintiff's claims, much of plaintiff's motion to compel relates to discovery that is, or may be, no longer relevant. Accordingly, this court will deny that motion without prejudice to its renewal after the district court has ruled on these findings and recommendations.

## STAY OF PROCEEDINGS

After plaintiff filed the motion to compel, defendants moved for a stay of discovery. (ECF No. 181.) After defendants in Rico filed an interlocutory appeal of Judge Mueller's March 2019 order, this court ordered the parties to brief the propriety of a stay of these proceedings pending the resolution of the appeal in that case. (See ECF Nos. 186, 189, 194.) This court finds

no basis for a stay because the issues in the Rico appeal – whether floor officer defendants and appeals review defendants are entitled to qualified immunity based on the 2015 Coleman order – are not relevant to any surviving issues herein.

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion to compel (ECF No. 179) is denied without prejudice.

Further, IT IS RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 154) be granted in part and denied in part as follows:
   a. Plaintiff's Eighth Amendment and state law claims for damages against defendants Harrington, Allison, Beard, Kernan, Davey, Gastelo, and Rackley for their conduct occurring after February 5, 2015 be dismissed.
   b. Plaintiff's claims for injunctive relief against defendant Kernan be dismissed.
   c. This case proceed on plaintiff's Eighth Amendment and state law claims for damages against defendants Lewis, Ducart, Davey, Stainer, Harrington, and Beard for their conduct occurring prior to February 5, 2015.
2. Defendants' motion to stay discovery (ECF No. 181) be denied.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 9, 2019

DLB:9/DLB1/prisoner-civil rights/lips0362.mtd fr

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

14